**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **E.L.W. and E.W.** | : | **Case No. _____** |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **COMPLAINT AND** |
| **v.** | : | **JURY DEMAND** |
| | : | |
| **UNITED HEALTHCARE** | : | |
| **INSURANCE COMPANY,** | : | |
| **UNITEDHEALTHCARE** | : | |
| **SERVICES, INC.,** | : | |
| **UNITEDHEALTH GROUP** | : | |
| **INCORPORATED, AND UNITED** | : | |
| **BEHAVIORAL HEALTH, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

NOW COME Plaintiffs E.L.W. and E.W, by and through counsel, and assert the following to the best of their knowledge, information and belief:

**INTRODUCTION**

1.      Plaintiffs' Complaint arises from Defendants' year-long denial of benefits for mental health treatment under a non-ERISA health insurance plan.

**JURISDICTION AND VENUE**

2.      This Court has diversity jurisdiction in this matter because the amount in controversy exceeds $75,000 and Plaintiffs and Defendants are citizens of different states.

3.      Venue is appropriate in this district because Defendants administer claims and insure individuals, like Plaintiffs, in this judicial district and many of the breaches at issue took place in this judicial district.  In addition, Plaintiffs reside in this district and Defendants conduct business in this district.

## PARTIES

4.     At relevant times, E.L.W. was a full-time employee of the City of Columbus and – while employed there and at the time the services at issue in this case were rendered – was a citizen of the State of Ohio and resided in this District. His employer-sponsored health insurance at issue in this litigation was administered by United Healthcare Services, Inc.  Because the Plan was established by a governmental entity, it is not governed by ERISA.  29 U.S.C. § 1002(32). A copy of the insurance plan is attached at Exhibit A to this Complaint and is referred to in this Complaint as the "Plan."

5.     E.L.W. and his son, B.W., are covered under the Plan.

6.     At all times relevant to the allegations in this Complaint, B.W. was either a minor in the custody of Plaintiffs, his parents, or a dependent covered under the terms of the Plan.

7.     Plaintiffs E.L.W. and E.W. both wish to preserve their family's anonymity in light of the sensitive nature of the medical care provided to B.W. that is the subject matter of this action and both Plaintiffs wish to preserve their privacy under Fed. R. Pro. R. 5.2(a) and related privacy protections.

8.     Defendant United Healthcare Insurance Company ("UHIC") is located in Hartford, Connecticut and incorporated in Connecticut. UHIC has delegated to Defendant United Behavioral Health the responsibility to make benefit coverage determinations for mental health and substance abuse services.

9.     Defendant UnitedHealthcare Services, Inc., ("UHS") is a Minnesota corporation with its principal place of business is located in Minnetonka, Minnesota. UHS is authorized to transact business in the State of Ohio.  UHS is a wholly-owned subsidiary of UHG.

10. The Plan designates UHS to be the Claims Administrator for the Plan. Exhibit A, pgs. 103, 115. UHS has the delegated authority to determine whether any given treatment is covered by the Plan and to interpret benefits provided by the Plan.

11. Defendant United Behavioral Health, Inc., ("UBH") operates under the brand name Optum and is a corporation organized under California law, and its principal place of business is located in San Francisco, California.

12. United HealthGroup Incorporated ("UHG") is a Delaware corporation with its principal place of business in Minnetonka, Minnesota. UHG is the ultimate parent of UHIC, UBH, and UHS.

13. The Plan delegated to the "Mental Health/Substance Use Disorder (MH/SUD) Administrator" the authority to "determine[] coverage for all levels of care" for Mental Health Services. The Plan does not designate a MH/SUD Administrator. UBH states that it performs these services for UHG, UHIC, and UHS.

### FACTS

14. The Plan covers Mental Health Services which is defined to include services for the diagnosis and treatment of Mental Illnesses. A mental illness is defined to include mental health or psychiatric diagnostic categories listed in the current *Diagnostic and Statistical Manual of the American Psychiatric Association* ("DSM").

15. The Plan also covers Substance Use Disorder Services which is defined to include services for the diagnosis and treatment of alcoholism and substance-related and addictive disorders that are listed in the DSM.

16. B.W. was diagnosed, among other conditions, with Anxiety Disorder, Major Depressive Disorder, and Cannabis Use Disorder. All three of these diagnoses are listed in the DSM and are therefore mental illnesses under the Plan.

17.     The Plan identifies UHS as a Claims Administrator for the Plan.

18.     Defendants draft the terms of the Plan and markets their use to employers like the City of Columbus. UHS makes all decisions of coverage for Plan benefits and decides appeals. UHS interprets the Plan language.

19.     UHS and UBH also develop and implement internal guidelines and policies that they use to make coverage decisions despite the fact that these internal guidelines and policies are not part of the Plan.

20.     After outpatient therapy, hospital encounters, and a three-week inpatient hospitalization at OSU-Harding Hospital failed, Plaintiffs admitted B.W. to Elevations RTC in Syracuse, Utah, on August 21, 2018 for treatment of serious mental illness and substance abuse.

21.     Elevations is an accredited facility licensed by the State of Utah to provide the services rendered to B.W.

22.     Defendants granted and then extended coverage at Elevations until October 12, 2018 after numerous internal peer-to-peer reviews.

23.     Ultimately, Defendants denied coverage for all of B.W.'s treatment at Elevations from October 13, 2018 forward determining that he did not need a level of care that provided 24-hour inpatient monitoring.

24.     An external appeal was filed and coverage was extended from October 10, 2018 through November 21, 2018, excluding November 16, 2018. B.W. eloped from Elevations on November 16, 2018. Notably, the external review upheld all of Defendants' denials after November 21, 2018. The extended period of coverage was approved only because  B.W. attempted suicide on October 10, 2018 and again attempted suicide on November 5, 2018, and then ran away from Elevations on November 16, 2018, engaged

in inappropriate behaviors, was apprehended by the police, and required an inpatient hospital evaluation and detox before being returned to Elevations.

25.    Between his admission to OSU-Harding Hospital in August 2018 and eloping from Elevations on November 16, 2018, B.W. attempted suicide four times, contemplated or discussed suicide multiple times, eloped from Elevations 2 other times, placed on restrictions or interventions for observation at Elevations multiple times, abused illegal drugs, and engaged in risky personal behavior.

26.    On admission to Elevations, B.W. was evaluated and noted to have a history of suicide attempts -- including the attempt at OSU-Harding Hospital; chronic suicidal ideation by overdose or hanging;  history of self-injurious behaviors; known history of assaultive behavior;  poor social, family, school, and emotional functioning; failed outpatient and recent higher level of care inpatient placements; substantial history of being unable to be contained in the home setting with frequent runaway behavior, frequent involvement of police; and, recommendations by both inpatient and prior outpatient providers for long term residential placement.

27.    Over the following weeks, and despite settling into Elevations, B.W. nevertheless discussed suicide, discussed how he could commit suicide, began preparations to commit suicide, and was placed on precautions to prevent him from committing suicide.

28.    B.W. was diagnosed as suffering from the following conditions identified in the DSM:

a.    Major depressive disorder, Recurrent episode, Severe;

b.    Unspecified anxiety disorder;

c.    Cannabis use disorder, Severe;

5

     d.      Other hallucinogen use disorder, Moderate;

     e.      Opioid use disorder, Mild;

     f.      Sedative, hypnotic, or anxiolytic use disorder, Moderate;

     g.      Tobacco use disorder, Severe;

     h.      Alcohol use disorder, Mild, In sustained remission;

     i.      Parent-child relational problem; and,

     j.      Attention-deficit/hyperactivity disorder, Combined presentation.

29. Despite having made some progress within treatment at Elevations, on September 14 – 3 weeks after his admission- B.W. attempted suicide. Then on October 10 – seven weeks after his admission – staff discovered that B.W. had attempted suicide again.

30. Six days after B.W.'s October suicide attempt, UBH denied coverage for the care B.W. was receiving at Elevations because, UBH determined, B.W. required care in the "Inpatient setting." In other words, UBH concluded at this time that B.W. needed a higher level of care.

31. On October 27 -- eleven days after it concluded that B.W. needed inpatient care -- UBH denied coverage for B.W.'s treatment at Elevations this time concluding that he could be treated in a "less intensive level of care." In other words, eleven days later UBH concluded that B.W. should be treated in a lower level of care. UBH stated: "In your case: Your child is doing better. Your child can control himself better. Your child is less depressed and less anxious. Your child is not feeling like harming himself or others. Your child has no withdrawal symptoms. Your child is learning sober coping skills. Your child does not have severe medical problems. Your child has the support of family."

32.     Days later, B.W. was permitted to spend the weekend with his family away from Elevations.  Despite his progress at Elevations and despite an otherwise pleasant weekend with his family, on Sunday night B.W. left the family's hotel room. B.W. connected with a stranger on a social app, engaged in risky personal behavior, and used illicit substances. Then, after returning to Elevations on November 5, B.W. harmed himself by twisting his neck, slamming his head against a wall and cut himself by using a coat hanger.

33.     After November 5, B.W. took a "much more negative trajectory in terms of his engagement with a more appropriate treatment course." He repeatedly expressed an intention to commit suicide and take drugs.

34.     Then, on November 15, 2018, while on a supervised outing with Elevations staff, B.W.  eloped from the group. During this incident, B.W. sold his personal effects to acquire drugs. He turned himself in to police about thirty-six hours after leaving Elevations. B.W. was evaluated at Intermountain Children's Hospital.

35.     Five months later – on April 13, 2019 – after an external appeal, UBH would authorize treatment for B.W. at Elevations for the period of October 13 through November 21, excluding November 16 -- because B.W. had eloped from Elevations on that date and did not receive treatment the day he was missing.

36.     B.W. did progress in his treatment at Elevations and was discharged in June 2019 to The Approach which is a co-ed transitional home environment designed to teens transition out of the highly structured residential environment of Elevations and into a more relaxed, less structured home environment.

37.     A couple of months after entering The Approach, B.W. attempted suicide again in August 2019.  After another inpatient hospitalization, B.W. was discharged to

Youth Care Recovery Center, another RTC facility, in Utah where he resided until February 15, 2020.

38. Upon being discharged from Youth Care and based upon their recommendation, B.W. entered an adult RTC facility in Utah - Ascend Recovery. On February 29, 2020, after 14 days of treatment, B.W. left Ascend and immediately started to engage in risky personal behavior and used illicit substances. On March 3, 2020, B.W. entered inpatient hospitalization for evaluation and to detox. B. W. returned to Ascend on March 4 but was shortly thereafter sent for inpatient hospitalization for suicide ideation. After B.W. was discharged from inpatient hospitalization, he did return to Ascend.

39. Despite all its prior denials that B.W. did not need the level of care provided at an RTC facility, UBH authorized treatment at Ascend Recovery from February 17, 2020, through April 7, 2020.

40. In all, Plaintiffs have spent in excess of $195,000 for B.W.'s treatment which Defendants refused to cover despite the terms of the Plan.

### Count 1
### Breach of Contract

41. Plaintiffs restate the preceding paragraphs as if fully set forth herein.

42. The Plan is a valid and existing agreement between Plaintiffs and Defendants.

43. Plaintiffs have satisfied the requirements of the Plan.

44. Defendants have breached the terms of the Plan in that they refused to authorize or provide coverage when coverage was clearly appropriate under the terms of the Plan.

8

45.     As a direct and proximate result of Defendants' breach of the Plan, Plaintiffs have sustained damages in excess of the jurisdictional limit of this Court.

**WHEREFORE**, Plaintiffs request the following:

a.     Compensatory damages in an amount determined by a jury representing the benefits that should have been paid under the Plan;

b.     Attorney fees;

c.     Prejudgment interest; and,

d.     Any other relief to which Plaintiffs may be entitled.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues that may be so tried.

Dated:  April 22, 2020                          Respectfully submitted,

 /s/ Robert R. Sparks
Robert R. Sparks (0073573)
STRAUSS TROY CO., LPA
150 E. Fourth Street, 4th Floor
Cincinnati, OH  45202
Telephone:  513-621-2120
Facsimile:  513-241-8259
Email:  *rrsparks@strausstroy.com*

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL  33334
Telephone:  954-616-8995
Facsimile:  954-206-0374
Email:  *jordan@jml-lawfirm.com*

*Counsel for Plaintiffs*

13962782_1.docx